**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

BLAIR DRAZIC,                              )
    PLAINTIFF,                         )        **CASE #:1:25-cv-2406-PTG-LRV**
                              )
                              )
v.                                         )
                              )
JAMES RENNE,                               )
    DEFENDANT.                         )

**MEMO IN OPPOSITION TO MOTION TO DISMISS AND MOTION TO TRANSFER**

**COMES NOW** the Plaintiff, by counsel, and files this memo in opposition to Motion to

Dismiss or Transfer (ECF 9 and memo in support ECF 10) and says as follow:

**MOTION TO DISMISS**

This case is before the Court without a written agreement for one simple reason. Plaintiff is a

lawyer that had worked with Defendant as co-counsel for years and he trusted him. He

reasonably believed that he could trust a fellow attorney. He learned at the end that his trust was

misplaced in this instance when the case concluded.

As an initial matter, the defendant begins by claiming that there are conflicting theories, and that

paragraphs 20 and 23 cannot both exist. This is at best a disingenuous argument, as paragraph 20

is part of the section titled Breach of Express Contract, and paragraph 23 is part of the section

titled Breach of Implied Contract. These are clearly alternative claims. Further, when defense

argues that Count III (Conversion) fails because there is no independent duty, it again, mixes the

pieces of the case by implying that there is a contract (whether expressed or implied) means that

Page 1 of 14

there can be no claim for conversion because there is no independent duty. However, defendant just argued that there is no agreement.

Counts 1 and 2 must be analyzed independently.

## Count I- express contract-

A contract, in general term, requires an offer, an acceptance, and consideration. *Montagna v. Holiday Inns, Inc*, 269 SE 2d 838, 844 (VA, 1980). The details are important, and can be the subject of a dispute, which is why a written contract is preferred over an oral contract, and the Parol Evidence rule prohibits admission of evidence outside the formation of the contract at formation time. Here, there is a written agreement, however, the agreement is between the clients (Bloom, Stallbaumer, Mattwaoshshe) and the parties herein (Drazic and Renne). Drazic has never seen the final signed agreement but he understood that he was a party. In fact, Drazic drafted and sent a proposed contract to Renne at Renne's request and it named Drazic as a party. There is a reason that the terms were loose; *Drazic had worked as co-counsel with Renne for years on this and other cases and Drazic trusted him*. The agreement, however, did not clarify the duties or how the fees would be divided between Drazic and Renne. Defendant then claims in the declaration in support that the representation ran from 2021 until 2023. Clearly, there was some "arrangement" between Drazic and Renne regarding fees and division of work. The terms of that arrangement are now disputed (which is why written agreements are clearly preferred). However, on its face, the complaint states that the parties had previously worked together, and worked together on several matters which are the subject of the complaint. (Complaint ¶9 and ¶10). In *Montagna*, there was a condition that was never discussed with the beneficiaries of the contract, so the terms of the contract were not ever agreed to. *Montagna* at 845. Here, the terms

Page 2 of 14

of the agreement were clear, or the parties would not have worked together for more than 2 years. However, because they were not in writing, the terms of the agreement were not recorded and able to be reviewed by the court. Its not that there were no terms, only that they were not in writing. Hence, the agreement was entered into in 2021, the parties performed according to the agreement, and breach occurred in 2023.

Here, there is alleged to be an agreement, not in writing. Complaint, ¶9-11. The breach occurred when the defendant failed to pay the agreed upon division of fees. Complaint, ¶12-13.

## COUNT II - IMPLIED CONTRACT

Count Two of the complaint reviews the allegations of the complaint, and brings a claim for implied contract. Among the options for implied contract are quantum meruit and unjust enrichment. In this case, it is very clear that each party did certain work on the cases with the underlying clients. And each party is thereby entitled to paid, if nothing else, in quantum meruit or unjust enrichment. Plaintiff has adequately stated a claim that there was an implied agreement that each party would do certain work, and would thereby be paid for the work. While there certainly can be a dispute about the amount of each parties fees in this matter, there can be no dispute that each party should be paid for the work done. See eg: *T. Musgrove Construction Co, Inv v. Young*, 298 Va 480, 840 SE 2d 337, 340-341 (VA 2020).

A claim for quantum meruit is one "[w]here service is performed by one, at the instance and request of the other and nothing is said of compensation for such service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefore" *Musgrove* at 341 quoting *Mongold v. Woods*, 278 Va 196, 203, 677 SE2d 288(2009).

Page 3 of 14

In this case, it is clear that the parties contemplated work, and that the work was not without compensation, even though there was no written agreement. The court can and should impose an implied contract for the reasonable value of the services.

In the event the court looks at this as unjust enrichment, the elements are "plaintiff conferred a benefit on the defendant; 2 – defendant knew of the benefit and should reasonably have expected to pay the plaintiff and 3- defendant retained the benefit without paying for its value" *Id*, with punctuation edited, citing *Schmidt v. Household Fin. Corp, II* 276 Va 108, 116, 661 SE2d 834 (2008). In this case, the defendant received the benefit of plaintiff's work and knowledge on the underlying cases, defendant knew of the benefit and should reasonably have expected to pay the plaintiff, and in fact paid a paltry sum of money to the plaintiff, and retained all of the benefit received.

It is beyond absurd to believe two lawyers would work on a contingent fee case for years, and in this case the evidence will show the work was intense likely due to Renne's personal interest in the issues presented, and that he would be paid whatever Renne *wanted*.

## COUNT III- CONVERSION

Plaintiff brings a claim for Conversion because Defendant's conduct went way beyond contract law and was tortious allowing tort damages.

Defendant misplaces their support in Condominium Services v. FOA, 709 SE2d 136 (Va 2011). In Condominium Services, the court found

> FOA [First Owners Association of Forty Six Hundred Condominium, Inc.] provided evidence at trial that the Management Agreement already had been terminated when CSI [Condominium Services, Inc.] opened a bank account by falsely

Page 4 of 14

representing authorization from FOA to do so, directed FOA's unit
owners to send money owed to FOA to it, and collected money
owed to FOA.

And that was sufficient for a finding of conversion. Condominium Services at 709 SE2d 163 at 171 (Va 2011). Where, as here, Renne took the money from the settlements, deposited it in his escrow account, offered $30,000 to Drazic, and refused to pay more, keeping the balance of the money. He had an independent duty to pay a sum, almost any sum of money that would have been reasonable, to Drazic. The agreement between the parties had terminated, and he kept the money,

But more importantly, Renne violated the most sacred duty imposed by the codes of professional responsibility imposed by all of the states involved in this case. Virginia Rules of Professional Responsibility states in part:

**"1.15 Safekeeping Property**

Depositing Funds

**All funds received** or held by a lawyer or law firm on behalf of a client **or a third party**, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses **shall be deposited in one or more identifiable trust accounts**; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

**[F]unds in which two or more persons (one of whom may be the lawyer) claim an interest shall be held in the trust account until the dispute is resolved and there is an accounting and severance of their interests**. Any portion finally determined to belong to the lawyer or law firm shall be withdrawn promptly from the trust account.

…

Specific Duties. A lawyer shall:

promptly notify a client of the receipt of the client's funds, securities, or other properties;

identify and label securities and properties of a client, or those held by a lawyer as a fiduciary, promptly upon receipt;

maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

**promptly pay or deliver to the client or another as requested by such person the funds,** securities, or other properties in the possession of the lawyer that such person is entitled to receive; and

**not disburse funds or use property of a client or of a third party with a valid lien or assignment without their consent or convert funds or property of a client or third party, except as directed by a tribunal. (emphasis added).**

The Model Rules state in Rule 1.15

**Rule 1.15: Safekeeping Property**

*Client-Lawyer Relationship*

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of [five years] after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose.

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

The Kansas Rule 1.15 states

(a)   A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b)   Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c)   When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

(d)   Preserving identity of funds and property of a client.

(1)   All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(i)   Funds reasonably sufficient to pay bank charges may be deposited therein.

(ii)   Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(2)   The lawyer shall:

(i)   Promptly notify a client of the receipt of the client's funds, securities, or other properties.

(ii)   Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(iii)   Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them.

(iv)   Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

(v)   Produce all trust account records for examination by the Disciplinary Administrator upon request of the Disciplinary Administrator in compliance with Rule 236.

(3)   Except as provided in subsection (3)(iv), any lawyer or law firm that creates or maintains an account for funds of clients or third persons that are nominal in amount or that are expected to be held for a short period of time and on which interest is not paid to the clients or third persons shall comply with the following provisions:

(i)   Such an account shall be established and maintained with a federal or state chartered or licensed financial institution located in Kansas and insured by an agency of the federal or state government. Funds shall be subject to withdrawal upon request and without delay.

(ii)   If the account bears interest, the rate of interest payable shall not be less than the rate paid by the institution to regular, nonattorney depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minima, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm so long as there is no impairment of the right to withdraw or transfer principal immediately.

(iii)   If the account bears interest, lawyers or law firms that deposit client funds in such an account shall direct the depository institution:

(aa)   to remit at least quarterly, to the Kansas Bar Foundation, Inc., interest or dividends, as the case may be, on the average monthly balance in the account or as otherwise computed in accordance with the institution's standard accounting practice; and

(bb)   to transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm for whom the remittance is sent and the rate of the interest applied; and

(cc)   to transmit to the depositing lawyer or law firm at the same time a report showing the amount paid to the Foundation, the rate of interest applied, and the average account balance of the period for which the report is made.

(iv)   A lawyer or law firm that elects not to comply with Rule 1.15(d)(3)(iii):

(aa)   shall file a Notice of Declination with the Clerk of the Appellate Courts on or before the beginning of the next annual registration period under Supreme Court Rule

Page 8 of 14

206; or

(bb)   notwithstanding the foregoing, may file a Notice of Declination with the Clerk of the Appellate Courts at such other time, after July 1, 1992, that a decision to decline is effected.

(v)   Every lawyer who has not previously registered or who is required to register under Supreme Court Rule 206 shall be provided the opportunity, at the time of initially registering, to elect or decline to comply with Rule 1.15(d)(3)(iii) (the IOLTA program) on such forms as the Clerk of the Appellate Courts may prescribe.

(e)   Every Kansas lawyer engaged in the private practice of law in Kansas shall, as a part of his or her annual registration, certify to the following:

"I am familiar with and have read Kansas Supreme Court Rule 240, KRPC 1.15, and I and/or my law firm comply/complies with KRPC 1.15 pertaining to preserving the identity of funds and property of a client."

(f)(1)   Every federal or state chartered or licensed financial institution referred to in KRPC 1.15(d)(1) shall be approved as a depository for lawyer trust accounts if it files with the Disciplinary Administrator an agreement, in a form provided by the Disciplinary Administrator, to report to the Disciplinary Administrator in the event any properly payable instrument is presented against a lawyer trust account containing insufficient funds, whether or not the instrument is honored. Any such agreement shall apply to all branches of the financial institution and shall not be canceled except upon thirty (30) days' notice in writing to the Disciplinary Administrator. The Disciplinary Administrator shall annually publish a list of approved financial institutions.

(2)   The overdraft notification agreement shall provide that all reports made by the financial institution shall contain the following information:

(i)   the identity of the financial institution;

(ii)   the identity of the lawyer or law firm;

(iii)   the account number;

(iv)   either (i) the amount of the overdraft and the date created; or (ii) the amount of returned instrument(s) and date returned.

The information required by the notification agreement shall be provided within five (5) banking days of the date the item(s) were paid or returned unpaid.

(3)   Every lawyer admitted to practice in this jurisdiction shall, as a condition thereof, be conclusively deemed to have consented to the reporting and production requirements mandated by this rule.

(4)   Nothing herein shall preclude a financial institution from charging a particular lawyer or law firm for the reasonable cost of producing the reports and records required by this rule. The Disciplinary Administrator's Office shall reimburse the financial institution for the reasonable cost of producing the reports and records required by this rule should the lawyer or law firm fail to do so.

(5)   This rule shall not create any cause of action for any person or organization against the financial institution based upon the failure of the financial institution to provide the notices required by this rule.

The Washington DC Rule 1.15 states

## Rule 1.15: Safekeeping Property

(a) A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds of clients or third persons that are in the lawyer's possession (trust funds) shall be kept in one or more trust accounts maintained in accordance with paragraph (b). Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) All trust funds shall be deposited with an "approved depository" as that term is defined in Rule XI of the Rules Governing the District of Columbia Bar. Trust funds that are nominal in amount or expected to be held for a short period of time, and as such would not be expected to earn income for a client or third-party in excess of the costs incurred to secure such income, shall be held at an approved depository and in compliance with the District of Columbia's Interest on Lawyers Trust Account (DC IOLTA) program. The title on each DC IOLTA account shall include the name of the lawyer or law firm that controls the account, as well as "DC IOLTA Account" or "IOLTA Account." The title on all other trust accounts shall include the name of the lawyer or law firm that controls the account, as well as "Trust Account" or "Escrow Account." The requirements of this paragraph (b) shall not apply when a lawyer is otherwise compliant with the contrary mandates of a tribunal; or when the lawyer is participating in, and compliant with, the trust accounting rules and the IOLTA program of the jurisdiction in which the lawyer is licensed and principally practices.

(c) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property, subject to Rule 1.6.

(d) When in the course of representation a lawyer is in possession of property in which interests are claimed by the lawyer and another person, or by two or more persons to each of whom the lawyer may have an obligation, the property shall be kept separate by the lawyer until there is an accounting and severance of interests in the property. If a dispute arises concerning the respective interests among persons claiming an interest in such property, the undisputed portion shall be distributed and the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. Any funds in dispute shall be deposited in a separate account meeting the requirements of paragraph (a) and (b).

(e) Advances of unearned fees and unincurred costs shall be treated as property of the client pursuant to paragraph (a) until earned or incurred unless the client gives informed consent to a different arrangement. Regardless of whether such consent is provided, Rule 1.16(d) applies to require the return to the client of any unearned portion of advanced legal fees and unincurred costs at the termination of the lawyer's services in accordance with Rule 1.16(d).

(f) Nothing in this rule shall prohibit a lawyer from placing a small amount of the lawyer's funds into a trust account for the sole purpose of defraying bank charges that may be made against that account.

Each of these rules are variations on a theme. The law is so well established that failing to follow this rule is the tort of conversion that citations are not necessary. The duty is not just independent of the contract but is the most sacred of legal duties for attorneys.

**TRANSFER TO D. Kansas.**

Defendant cites 28 USC 1404(a) as a basis to transfer venue. Section 1404(a) allows for the transfer of venue based on the convenience of the parties and witnesses.

However, venue in this case was based on 28 USC 1391(b)(1), the jurisdiction where the defendant resides. In the declaration of Renne, even he admits that his residence is not in Kansas. While this case is about fees between two lawyers, the underlying litigation is all but irrelevant. The defendant resides in the Eastern District of Virginia, his office is in the Eastern District of Virginia. To the limited extent any third party witness would need to be interviewed or deposed,

Page 11 of 14

there is no reason that could not happen with this case proceeding where the defendant resides and the deposition taking place in Kansas or anywhere else the relevant client was located.

The defendant is located here, in the Eastern District of Virginia. The plaintiff is a resident of Colorado. While the litigation complained of took place predominantly in Kansas, there is nothing in Kansas except for the underlying clients. All the documents, all the materials are either in defendant's possession, in the Eastern District of Virginia, or in Colorado, where the plaintiff is located.

Using the analysis of *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Services, Inc*, 791 F3d 436, 444 (4th Cir, 2015), cited by the defendant, the court could entire ignore plaintiff's choice of forum (factor 1). Neither Virginia nor Kansas would be remarkably convenient for the plaintiff.

Factor 2- convenience of the witnesses can also be nearly entirely ignored because the underlying clients are not relevant witnesses. They are not parties to the agreement or non-agreement between the plaintiff and defendant, and it is unlikely that they would have any knowledge of the agreed upon division of labor, fees, or materials. Further, any underlying client who's testimony would be relevant could be deposed by the parties and that testimony could be read into the record or used for summary judgment purposes if relevant.

Factor 3- convenience of the parties militates towards retaining the case in the Eastern District of Virginia. Defendant's office is located here, defendant maintains all files and records here. Nowhere in the declaration does Mr. Renne claim that his office is located in Kansas. In fact, it would be difficult for him to do so, as his website and his pleadings all cite an office address at 4201 Wilson Blvd, Suite 110521, Arlington, VA 22203. From online searches, he appears to

Page 12 of 14

reside in Arlington. It would clearly be more convenient for the defendant to litigate this matter in his own backyard. The deposit of the funds, to which account are "red herring" issues. The amount will be described in documents that are in the possession of the defendant, in his office in Arlington.

The fourth factor, the interests of justice are about fees between the parties. It is related to litigation that occurred in Kansas, but also some of the litigation was in the District of Columbia, or at least contemplated in The District of Columbia. However, the underlying litigations have concluded and it would unnecessarily disturb the matter in D. Kansas. Further, the litigations in Kansas would not have any information in the court. It would be no more convenient to litigate attorney fees between two lawyers in Kansas as here, in the Eastern District of Virginia.

WHEREFORE, plaintiff Drazic moves this court to NOT dismiss this matter, and NOT transfer this matter to another court.

**BLAIR DRAZIC**

<u>/s/ Jason M. Krumbein, Esq.</u>
by: Jason M. Krumbein, Esq. VSBN 43538
JKrumbein@KrumbeinLaw.com
Krumbein Consumer Legal Services
Counsel for Plaintiff
10307 W. Broad St. Suite 293
Glen Allen, VA 23060
804.592.0792 phone
804.823.2565 fax

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5 May 2026 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**John Isaac Post, Esq.**
**Counsel for James Renne.**

And to the following non-filing users:

NONE

_____/s/_____
Jason M. Krumbein, Esq. VSB# 43538
JKrumbein@KrumbeinLaw.com
Krumbein Consumer Legal Services
10307 W. Broad St. Suite 293
Glen Allen, VA 23060
(804) 592-0792 - Telephone
(804) 823-2565 – Facsimile

Page 14 of 14